### JUDKINS *v.* UNION MUTUAL FIRE-INSURANCE COMPANY.

The provision of the charter of a mutual fire-insurance company, that no execution shall issue upon any judgment against them until three months after the rendition thereof, will be enforced by the court, although the judgment be founded upon a foreign judgment rendered long before.

Where judgment is rendered in favor of a member of a mutual fire-insurance company, divided into several distinct and independent classes, for a loss by fire of property insured in a particular class, and for which only those members having property insured in that class are, by the provisions of the charter and by-laws of the company, responsible, the court will limit the operation of the execution issued, to run only against the goods, chattels and lands, the property and funds of the company, belonging to that class.

DEBT, upon a judgment recovered in the Supreme Judicial Court for the county of Kennebec, Maine, in 1856, upon a policy of insurance on the plaintiff's saw-mill, insured in the Fourth, or Manufacturers' Class, of the defendant company.

Judgment having been rendered in favor of the plaintiff by agreement of the parties, the defendants moved that the execution be stayed for three months, and that the operation of the execution, when issued, be limited to the funds and property of the defendant corporation belonging to the Fourth, or Manufacturers' Class, agreeably to the provisions of the charter and by-laws of the defendant corporation, which were annexed to and made a part of the policy of insurance issued to the plaintiff, on which the original judgment was founded.

The last clause of the 8th section of the charter of the defendant corporation is in these words:

" *And provided*, *also*, that execution shall not issue on any judgment against said company, until after the expiration of three months from the rendition thereof."

The following are copies of the second, and parts of the fifth, seventh and tenth sections of the charter, and of

Judkins *v.* Union Mutual Fire-Insurance Company.

articles 4, 7, 8 and 21 of the by-laws of the defendant corporation:

" SECTION 2. *And be it further enacted,* That all property, whether real or personal, insured by said company, shall be divided into four separate and distinct classes, and each class shall be liable for its own losses. The premium notes of each class of risks shall be holden and assessed to pay the losses occurring in their respective classes, and not each for the other, and the policy of each member of the company shall designate with which class of risks he is associated. The company shall open books of account with each class of risks, and all the business receipts, disbursements, losses, assessments and expenses shall be put to the several classes to which they are applicable, and the general expenses of the company, which are not strictly applicable to either class, shall be apportioned to the several classes according to the amount insured by each."

SEC. 5. \* \* \* \* \* [The Directors] " shall class the property to be insured into four different classes, and fix upon the different kinds of property to be embraced in each class, which classes shall severally be made as equal in regard to risks as practicable." \* \* \* \* \*

" SEC. 7. *And be it further enacted,* That every member of said company shall be, and hereby is, bound and obliged to pay his proportion of all losses and expenses happening or accruing in and to the class in which his property is embraced." \* \* \* \* \*

" SEC. 10. *And be it further enacted,* That if it shall ever so happen that the whole amount of deposit notes of either of the four classes aforesaid, shall be insufficient to pay the losses occasioned by fire, in such case the sufferers insured by said company shall receive, towards making good their respective losses, a proportionate dividend of the whole amount of said notes, according to the sums by them insured of their respective classes." \* \* \* \* \*

" ARTICLE 4. Notice of assessments, designating the class

or classes of property insured, shall be given in such manner as the directors may order."

" ART. 7. The directors shall have power to borrow, from time to time, on the faith of the company, such sums of money as may be required to meet losses; and in making the next assessment the sums thus borrowed, the interest thereon, and all necessary incidental expenses, shall be included and assessed upon the class or classes for which the money was borrowed and appropriated.

" ART. 8. The property insured by said company shall be divided into four classes, viz.:

The *First Class* shall consist of farm-houses, barns, and their contents, and any other property not deemed more hazardous, and shall be insured for a term not exceeding six years.

The *Second Class* shall consist of dwelling-houses, barns and their contents, in town and villages, and shall be insured for a term not exceeding six years.

The *Third Class* shall consist of stores, merchandise, public houses, public boarding-houses, churches, academies, school-houses, saddle, harness and trunk makers' shops, tanneries (where no steam is used), bridges, bookbinderies, printing-offices, tin-plate workers, hatters, shoe-shops and shoe stock, and any other property not deemed by the Directors to be more hazardous, and shall be insured for a term not exceeding three years.

The *Fourth Class* shall consist of machine-shops, iron founderies, cabinet, carpenters', coopers', carvers', turners', wheelwrights' and wood and iron workers' shops generally; boat builders', musical instrument makers' and painters' shops, and livery stables; bakers', tallow-chandlers', soap boilers', and sail-makers' shops or buildings; saw, grist, flour, clapboard, shingle, lath, sugar-box, and fulling mills; dye-houses, tanneries (where steam is used); oil, comb, button, chair and last factories; cotton, woolen, worsted, silk and linen factories; wood, standing or cut;

builders' risks, iron machine shops and iron founderies, where steam power is used, and of any other property that the directors may deem proper to include in this class, and shall be insured for a term not exceeding three years."

"ART. 21. Every person insured shall be liable for his proportion of all losses and expenses of the class to which he belongs in the company, until he cause his policy to be discharged, and his proportion of losses and expenses to be paid ; notwithstanding he may, by some act or neglect, have rendered his policy void against the company."

*W. E. Chandler*, (with whom were *George & Foster*,) for the defendants, to sustain the motion to stay the execution for three months, cited and relied upon the following authorities : *Chickering* v. *Greenleaf*, 6 N. H. 51; *Gooden* v. *Amoskeag Ins. Co.*, 20 N. H. 73 ; *Nevins* v. *Rockingham Ins. Co.*, 25 N. H. 22 ; *Boynton* v. *Middlesex Ins. Co.*, 4 Met. 212, 216 ; *Amesbury* v. *Bowditch Ins. Co.*, 6 Gray 596 ; *Fullam* v. *New-York Union Ins. Co.*, 7 Gray 61; *Wilson* v. *Etna Ins. Co.*, 27 Vt. 99 ; *Gray* v. *Hartford Ins. Co.*, 1 Blatch. C. C. 280 ; *Ketchum* v. *Protection Ins. Co.*, 1 Allen (New-Brunswick) 136.

In support of the motion to limit the operation of the execution when issued, he referred to *Cooke* v. *Gibbs*, 3 Mass. 196; Compiled Statutes, ch. 193, sec. 7 ; *Chickering* v. *Greenleaf*, 6 N. H. 51; *Davenport* v. *Tilton*, 10 Met. 331 ; 1 Ch. Pl. 589; 1 Ch. Pl. 54, 57 ; *Peck* v. *Jenness*, 7 Howard (S. C.) 623 ; *Wallace* v. *Blanchard*, 3 N. H. 395; *Kittredge* v. *Warren*, 14 N. H. 537, 539, 540 ; *Kittredge* v. *Emerson*, 15 N. H. 252, 253, and Colby's Practice 294.

*Butters & Goodwin*, for the plaintiff.

FOWLER, J. By a special provision of the charter of the defendant corporation, which became a constituent portion of the contract between these parties, no execu-

tion can issue upon any judgment against the defendant company until after the expiration of three months from the rendition thereof. The authorities cited by the defendants' counsel are abundantly sufficient to show the validity of such a provision, and the power and duty of courts to enforce it. We are, therefore, of opinion that the execution in this case must be stayed for three months after the rendition of judgment, in accordance with the express requirements of the defendants' charter.

Our first impression was, that a judgment, having long since been rendered in Maine, the design and purpose of the special provision had already been attained by the delay occurring between the rendition of judgment there, and the rendition of judgment here resting upon the former judgment, but reflection satisfies us that this impression was erroneous. The evident purpose of the provision was to give opportunity for the defendant corporation, by assessments on their premium notes, and otherwise, to raise funds wherewith to adjust and satisfy any judgment against them, before an execution, should issue, to be levied upon the property of the company. Now, upon a foreign judgment, no execution could issue which could be levied upon the property of the corporation in this State, where the company is located, and where its property and funds must necessarily be chiefly found. Hence there is substantially the same reason for the company's having three months in which to collect funds wherewith to meet the liabilities resulting from a judgment here, founded upon a foreign judgment, before execution shall issue, as would have existed if the judgment here were rendered upon the original cause of action, as it existed in the policy of insurance between the parties. Until the rendition of judgment here, the property of the corporation was in no danger from a levy, and the company were exposed to no risk of sacrifice and loss from the peremptory sale of their goods and chattels upon exe-

cution. The present is the first occasion when they have needed the protection contemplated in the special provision of their charter, and we are clearly satisfied that they are entitled to receive it.

So, too, in regard to the motion to limit the operation of the execution that may be issued to the funds and property, the goods, chattels or lands of the defendant corporation, belonging to the fourth, or manufacturers' class of said company. It is manifestly apparent, from an examination of the whole tenor of the charter and by-laws of the defendant corporation, which were expressly made part and parcel of the contract between the parties, that the plaintiff, in becoming a member of the defendant company by obtaining insurance in its fourth, or manufacturers' class, acquired no more claim to the funds and property of the other three classes, nor any greater right to contribution from the members of those classes, to satisfy any loss that he might incur by the destruction by fire of the property insured to him, than to the funds and property of any other independent and distinct insurance company, or from the members of such other independent and distinct company. The defendant corporation is, in truth and in substance, four distinct and independent insurance companies, under the management and control of a single board of directors, elected by the individual members of each of those distinct companies, and for convenience transacting business under one general name. But the premium notes of each class of risks, which alone constitute the capital stock of the company, available for the payment of losses and other liabilities, are expressly made liable to be assessed to pay the losses occurring in their respective classes only, and not each for the other. The plaintiff, then, in accepting his policy, bound and obliged himself to limit his claim of payment for the loss or damage by fire of his property insured, to the funds and property of the manufacturers' class alone, and

Judkins *v.* Union Mutual Fire-Insurance Company.

we can perceive no reason why, in accordance with the motion of the defendants, the execution, which may issue upon his judgment, should not be restricted to run only against the funds and property of the defendant corporation belonging to that class.

The authorities referred to in the defendants' brief seem to us conclusive upon the power of the court to limit the operation of the execution as indicated.

Nor can it be urged that the defendants, by omitting to move for such limitation of the execution, if one issued upon the judgment in Maine, have thereby waived the right to insist upon its application here. As before observed, no execution which may have issued in Maine could be levied upon the property of the corporation in this State, and hence it would have been entirely useless for the company to have asked for a limitation of the exetion, if any issued there. Besides, it is a matter vital to the interests of all the persons insured in the various classes of the company, that the funds and property of each class should be levied upon to satisfy the judgments obtained for losses in that particular class only. The provisions of the charter are of public concern and of public consideration, and no mere neglect of the defendants could, therefore, be construed to waive them. *Hanover* v. *Weare*, 2 N. H. 131, and authorities cited on page 133.

On the whole, therefore, we have no hesitation in holding that the motion of the defendant, in both its branches, should be granted; that the execution should be stayed for three months, and that when it issues it should run only against the goods, chattels and funds, the property and funds of the defendant corporation belonging to its fourth, or manufacturers' class.

*Motion granted.*